## THE THOMAS BARLUM.

## THE JOHN J. BARLUM.

### DETROIT TRUST CO. v. BARLUM S. S. CO.
#### (two cases).

#### Nos. 1795, 1794.

District Court, W. D. New York.
March 9, 1933.

Miller, Canfield, Paddock & Stone, of Detroit, Mich., and Stanley & Gidley, of Buffalo, N. Y. (Ray M. Stanley, of Buffalo, N. Y., of counsel), for libelant.

George E. Brand, of Detroit, Mich., and Thomas C. Burke and Charles S. Desmond, both of Buffalo, N. Y., for claimant.

ADLER, District Judge.

These actions were brought to foreclose in admiralty two preferred mortgages, executed and delivered by the Barlum Steamship Company, covering the steamers Thomas Barlum and John J. Barlum under the provisions of the Ship Mortgage Act § 30 D et seq. (chapter 25, title 46, § 922 and succeeding sections, of the United States Code Annotated). Each of the mortgages is for $200,-000.

The two actions are identical except for the names of the vessels and the disposition of the amounts involved. Upon the filing of the libels, the mortgagor appeared as claimant and filed exceptions in each case. The exceptions questioned the jurisdiction of the United States District Court upon the ground that Congress had no power under the Constitution to increase and extend the admiralty and maritime jurisdiction of the federal courts, by bringing within such jurisdiction things nonmaritime, to wit, mortgages on ships. This court overruled those exceptions and held the Ship Mortgage Act providing for foreclosure of preferred mortgages on ships to be constitutional. Detroit Trust Company v. Barlum S. S. Co. (D. C.) 56 F.(2d) 455. Thereafter the claimant answered in the actions setting up two separate defenses: First, that the proceeds of the loans, as security for which these mortgages were given, were used almost entirely for nonmaritime purposes, such as real estate loans, to the knowledge of libelant when the mortgages were given. Second, that the foreclosure provision of the Ship Mortgage Act is unconstitutional. Thereupon the libelant in turn excepted to the two defenses set up in the answer. This court, after a hearing, sustained libelant's exceptions to the second defense, in accordance with its opinion above cited holding the Ship Mortgage Act constitutional. Libelant's exceptions to the first defense were overruled and the cases went to trial on the question whether the fact allegations in the first defense, to wit, that the proceeds of the loans as security for which these mortgages were given

734

were used almost entirely for nonmaritime purposes, raised a triable issue as to the actual character of these particular mortgages.

On the trial it was shown that a considerable part of the proceeds of each of the $200,000 mortgages was applied by the mortgagor, or by agreement between the mortgagor and the mortgagee, to nonmaritime purposes.

Proctors for the claimant in their brief argue ably against the constitutionality of the foreclosure provisions of the Ship Mortgage Act. I have determined that question in favor of its constitutionality (Detroit Trust Company v. Barlum S. S. Co., supra) and will not further discuss it here. The question now is whether in the case of a mortgage, the proceeds of which were in large part or were intended to be in large part devoted to a nonmaritime purpose, such mortgage was a contract that could be taken cognizance of by the admiralty court in proceedings for foreclosure under the provisions of the Ship Mortgage Act.

The Ship Mortgage Act of 1920 provides for preferred mortgages on shipping and for their enforcement. In the cases cited in which the constitutionality of the act was upheld, the Oconee (D. C.) 280 F. 927, The Nanking (D. C.) 292 F. 642, The Lincoln Land (D. C.) 295 F. 358, in two of them the mortgages were purchase-money mortgages and in the other the proceeds of the mortgage were used for reconditioning the ship. It does not appear in any of the cases that the purpose for which the money was obtained or the use to which it was put influenced the decision. The Ship Mortgage Act providing for the preferred status of mortgages on vessels says nothing about the use to which the proceeds of the loan was to be put. The broad purpose of the act which was to permit of adequate financing of shipping did not and could not limit the application of the proceeds of a loan to a particular use. It might well be that money obtained from a preferred ship mortgage would be used by the individual or company obtaining it in fitting out its fleet by expending it for a number of purposes other than maritime. I think it would nullify the Ship Mortgage Act, which I have found to be constitutional, to hold that because some part of the money obtained on a ship mortgage was used for a purpose not distinctly maritime that the entire mortgage did not come within the provisions of the act.

There is no question raised here of the validity of these mortgages. The only question is the right of the libelant to enforce these mortgages in a court of admiralty.

Each of these mortgages, properly executed and validated by compliance with the provisions of the statute, became a lien upon the mortgaged vessel. The action to foreclose the lien may be brought by the provisions of section 30K of the act (chapter 25, § 951, 46 USCA) by suit in rem in admiralty. Assuming the constitutionality of this act, we have the admiralty court exercising jurisdiction over the ship itself which duly launched and in the waters of the United States is certainly a maritime thing.

My conclusion is that the libels in both cases are sustained.

A decree may be submitted upon notice.